UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RICKEY OLIVER LOFTON, JR., | Case No. 2:23-cv-01821-RFB-BNW |
| Plaintiff, | **ORDER** |
| v. | |
| TESLA, INC., | |
| Defendant. | |

## I.  INTRODUCTION

Before the Court are Plaintiff's Motion to Remand and Defendant's Motion to Compel Arbitration.  ECF Nos. 9, 10.

## II.  PROCEDURAL AND FACTUAL BACKGROUND

On October 2, 2023, the Plaintiff, Rickey Lofton, filed a Complaint initiating this case in the Eighth Judicial District Court in Clark County. ECF No. 1-1.

Plaintiff began to work for Tesla, Inc. ("Tesla") in 2020. He was terminated on October 13, 2021. Plaintiff alleges his stock vesting date was erroneously recorded on a date later than his correct vesting date. He asserts that he should have had his first year of stock options paid out on this date of his termination.  The Complaint asserts six claims including breach of employment contract, wrongful termination, breach of covenant of good faith and fair dealing, conversion, promissory estoppel, and unjust enrichment. On November 6, 20223, Tesla removed the case to the present court. ECF No. 1. On November 27, 2023, the Plaintiff filed a Motion to Remand. ECF No. 9. On the same date, the Defendant submitted a Motion to Compel Arbitration. ECF No. 10.

///

### III. MOTION TO REMAND

The Court addresses the Plaintiff's Motion to Remand.

#### a. Legal Standard

Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute. See U.S. Const. art. III, § 2, cl. 1; Gunn v. Minton, 568 U.S. 251, 256 (2013) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). When initiating a case, "[a] plaintiff is the master of [their] complaint, and has the choice of pleading claims for relief under state or federal law (or both)." Hansen v. Grp. Health Coop., 902 F.3d 1051, 1056 (9th Cir. 2018) (citing Caterpillar Inc. v. Williams, 482 U.S. 386, 389-99 (1987)). Generally, plaintiffs are entitled to deference in their choice of forum. Ayco Farms, Inc. v. Ochoa, 862 F.3d 945, 949-50 (9th Cir. 2017).

However, Congress has enacted statutes that permit parties to remove cases originally filed in state court to federal court. 28 U.S.C. § 1441. The general removal statute permits the defendant in a state-court action over which the federal courts would have original jurisdiction to remove that action to federal court. Home Depot U.S.A., Inc. v. Jackson, 139 S. Ct. 1743, 1746 (2019). "To remove under [§ 1441(a)], a party must meet the requirements for removal detailed in other provisions." Id. When federal jurisdiction is based solely on diversity jurisdiction, the case "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought," 28 U.S.C. § 1441(b)(2); Home Depot U.S.A., Inc., 139 S. Ct. at 1746; see also Lively v. Wild Oaks Markets., Inc., 456 F.3d 933, 939 (9th Cir. 2006). A defendant "always has the burden of establishing that removal is proper" and must overcome a "strong presumption against removal jurisdiction." Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka, 599 F.3d 1102, 1107 (9th Cir. 2010) (internal quotation marks and citation omitted). Federal courts construe the removal statute against removal. Id.; see also Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009) ("[A]ny doubt about the right of removal requires resolution in favor of remand.").

///

///

### b. Discussion

Under 28 U.S.C. § 1332, a federal district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1).

When original jurisdiction exists under either 28 U.S.C. § 1331 or § 1332 but the matter was filed in a state court, the matter may be removed to federal district court. 28 U.S.C. § 1441(b). Proper jurisdiction under Section 1332 requires complete diversity, so each plaintiff must be diverse from each defendant. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005). A district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional amount. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).

The Plaintiff argues that the Defendant cannot demonstrate that this Court holds diversity jurisdiction to hear this case because the amount-in-controversy does not meet $75,000. Plaintiff asserts that the claims for relief are alternative theories and he is not entitled to double recovery for the same incident. He alleges damages in excess of $15,000 for the first five causes of action and $30,009.96 for the sixth cause of action. Thus, the amount-in-controversy is only $30,000 for the loss in stock options. The Defendant responds that the aggregation of claims for purposes of meeting the amount-in-controversy requirement is permitted for claims brought by a single plaintiff against a single defendant.

The Plaintiff focuses much of his argument on the idea that the Court cannot add up the different damages amounts because of the double recovery doctrine. However, the Court finds this argument unpersuasive.

The double recovery doctrine provides that a plaintiff may recover only once for a single injury even if it asserts multiple legal theories. Powell v. Tico Constr. Co., 2023 Nev. App. Unpub. LEXIS 497 (citing Elyousef v. O'Reilly & Ferrario, LLC, 245 P.3d 547, 549 (2010) (concluding that the double recovery doctrine prohibits a plaintiff from recovering another judgment from a different defendant after one defendant has already satisfied the judgment)). This doctrine is

relevant when a Plaintiff has recovered the totality of his damages from one party and attempts to recover additional damages from a separate party. And before the double recovery doctrine is triggered, the plaintiff must receive something of value in satisfaction of the judgment. Elyousef, 245 P.3d at 549.

In Elyousef, the Nevada Supreme Court explained that part of the reason Elyousef could not recover from a second defendant was because he received reimbursement for damages in a settlement agreement that covered part of the damages he was seeking, and his controlling interest in an LLC was restored, which resulted in a total valuation beyond what he was seeking in damages. Therefore, Elyousef had been made whole. In the Powell case, the Plaintiff had not yet been made whole, so the Plaintiff's previous satisfaction of judgment did not preclude him from collecting on a second defendant's satisfaction of judgment. These conditions are not present in the current case and the doctrine of double recovery is not relevant here.

In evaluating whether the jurisdictional threshold has been met, the court first considers whether the amount in issue is "facially apparent" from the complaint. Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997). When it is unclear from the complaint whether the amount in controversy exceeds $75,000, then the court will turn to "evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal". See Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015) (internal quotation marks omitted). Mere speculation, conjecture, or unreasonable assumptions will not support the court's exercise of subject-matter jurisdiction. Id. When determining whether the sum of damages meets the statutory minimum, the court may rely upon a plaintiff's claims of general and specific damages. Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005).

The Complaint does not indicate that any of the causes of action are pled in the alternative. As noted, the Plaintiff pleads damages in excess of $15,000 for the first five causes of action and $30,009.96 for the sixth cause of action. This is a minimum total of $105,009.96 which exceeds the $75,000 threshold. Additionally, Plaintiff is a citizen of the State of Nevada and Tesla is a company whose principal place of business is based in Texas. Accordingly, there is complete

diversity of the parties and the amount-in-controversy is met so this Court may properly exercise diversity jurisdiction over this case. Hence, the Motion to Remand is denied.

## IV. MOTION TO COMPEL ARBITRATION

The Court addresses the Defendant's Motion to Compel Arbitration.

### a. Legal Standard

The Federal Arbitration Act ("FAA") provides that contractual arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67-68 (2010). Private agreements to arbitrate under the FAA are enforced according to their terms. See 9 U.S.C. § 4. Therefore, a party may petition a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." Id.

"[T]here is no 'strong federal policy favoring enforcement of arbitration agreements.' The federal policy is to treat arbitration agreements like other contracts." Armstrong v. Michaels Stores, Inc., 59 F.4th 1011, 1014-15 (9th Cir. 2023) (citing Morgan v. Sundance, Inc., 596 U.S. 411 (2022)). A party "cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Techs. Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (internal quotation marks omitted). Under the FAA, in assessing the enforceability of a contractual arbitration provision, a district court's role is "limited to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). If the answer to both inquiries is affirmative, then the FAA requires the court to enforce the agreement in accordance with its terms. Id. "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91 (2000).

///
///
///
///

### b. Discussion

The Court finds there is a valid arbitration agreement and the FAA applies to this case.

#### i. There is a Valid Arbitration Agreement

"Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA." Walsh v. Ariz. Logistics, Inc., 998 F.3d 393, fn. 1 (9th Cir. 2021) (citing EEOC v. Waffle House, Inc., 534 U.S. 279, 289 (2002)). The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

"By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). The FAA limits the district court's role to determining (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement to arbitrate encompasses the claims at issue. Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration …." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983). Thus, "[t]he standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the Act is phrased in mandatory terms." Republic of Nicar. v. Std. Fruit Co., 937 F.2d 469, 475 (9th Cir. 1991).

The determination of whether a particular issue should be determined by the arbitrator rather than the court is governed by federal law. Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). However, when deciding whether the parties agreed to arbitrate a certain matter, courts generally apply ordinary state law principles of contract interpretation. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

///
///
///

ii.  The Arbitration Agreement is Not Unconscionable

The Plaintiff argues that even if there is a valid arbitration agreement, the agreement is unconscionable. In order for a contract or contract provision to be unconscionable and invalidated, it must be both procedurally and substantively unconscionable. See United States Home Corp. v. Ballesteros Trust, 415 P.3d 32 (Nev. 2018); Burch v. Second Judicial Dist. Court, 49 P.3d 647 (Nev. 2002).

The Agreement is not procedurally unconscionable. A contract term is procedurally unconscionable if a party does not have the opportunity to agree to the contract term either because (1) the contract is an adhesion contract, or because (2) the terms are not readily ascertainable upon a review of the contract. CVSM, Ltd. Liab. Co. v. Doe, 435 P.3d 659 (2019) (citing D.R. Horton, Inc. v. Green, 96 P.3d 1159, 1162 (Nev. 2004)).

The Nevada Supreme Court has declined to apply the unconscionable adhesion contract doctrine to employment contract cases because employment contracts can generally be negotiated. Id. (citing Kindred v. Second Judicial Dist. Court, 996 P.2d 903, 907 (2000) (explaining that this court has not applied the unconscionable adhesion contract doctrine to employment contracts)).

A provision's terms are not readily ascertainable if it is presented or negotiated in a way that conceals the terms' meaning. Id. For example, if the contract terms are inconspicuous—that is, if the arbitration agreement is in fine print, or "buried in an endnote or exhibit"—then the agreement may be procedurally unconscionable. Id. However, while the terms cannot be inconspicuous, the parties have no duty to make the arbitration provision more conspicuous than other parts of the contract. Id. (citing United States Home Corp. v. Michael Ballesteros Tr., 415 P.3d 32, 41 (2018) ("Requiring an arbitration clause to be more conspicuous than other contract provisions . . . is exactly the type of law the Supreme Court has held the FAA preempts because it imposes stricter requirements on arbitration agreements than other contracts generally.")). The Court finds nothing identified by the Plaintiff that rises to procedural unconscionability.

The Agreement is not substantively unconscionable. The Nevada Supreme Court has found substantive unconscionability in various circumstances. For example, the Court held that contract terms that violate public policy are often one-sided in favor of the more powerful party, rendering

them substantively unconscionable. Gonski v. Second Judicial Dist. Court of Nev., 245 P.3d 1164 (Nev. 2010), overruled in part on other grounds by United States Home Corp. v. Ballesteros Tr., 415 P.3d 32 (Nev. 2018)) Additionally, arbitration agreements cannot be used to avoid rights and liabilities imposed by statute when doing so would violate the public policy of this state. See, e.g., State Farm Mut. Auto. Ins. v. Hinkel, 488 P.2d 1151, 1153 (Nev. 1971) (discussing a contractual exclusionary clause in light of Nevada public protections under insurance statutes and noting that "[i]t was not the intent of the legislature to require the appellant to offer protection with one hand and then take a part of it away with the other"); 8 Richard A. Lord, WILLISTON ON CONTRACTS § 18:10 (4th ed. 2010) (noting that substantively unconscionable terms are those that "are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy"). Id.

The Plaintiff makes several assertions to argue that the agreement is substantively unconscionable. First, the Plaintiff argues that it is extremely one-sided. The Court does not find any clause which violates public policy indicating the agreement is one-sided. See D.R. Horton, 96 P.3d at 1162-63 (substantive unconscionability "is based on the one-sidedness of the arbitration terms" and whether those terms are "oppressive"). Second, Plaintiff argues the agreement is an adhesion contract. As noted, the Nevada Supreme Court has declined to apply the unconscionable adhesion contract doctrine to employment contract cases because employment contracts can generally be negotiated." CVSM, Ltd. Liab. Co. v. Doe, 435 P.3d 659 (2019). Hence, this is not a valid reason to invalidate the arbitration clause. Third, Plaintiff argues that the agreement waives his right to a trial without clearly putting him on notice of it.  The Court finds this reasoning to be unclear and unpersuasive. The Agreement states that claims will be handled through arbitration and a loss of procedural rights is not a valid reason to invalidate an arbitration agreement. See U.S. Home Corp., 415 P.3d at 42 ("Nearly all arbitration agreements forgo some procedural protections, such as the right to a jury trial. . . .").

Fourth, the Agreement was only provided in digital format via email and the arbitration clause would not show on the screen when first accessed. The Court rejects this argument, since Plaintiff does not allege that he was unable to read the Agreement. This is not a valid reason to

invalidate the arbitration clause. Fifth, Plaintiff argues the Agreement is unconscionable because the arbitration clause is in the same size and font type as the rest of the agreement, without any caption, bold, underlining, italics, larger font size, or numbered paragraph. While the terms cannot be inconspicuous, the parties have no duty to make the arbitration provision more conspicuous than other parts of the contract. CVSM, Ltd. Liab. Co., 435 P.3d at 659 (2019).

Sixth, Plaintiff asserts that he only had limited time to read and understand the employment contract. The Court find that "[n]othing in the record indicates, nor does either party argue, that [Plaintiff was] rushed or did not have time to read over these documents. [Plaintiff] signed [the agreement] indicating that they had read and understood them." Id. Seventh, Plaintiff argues the Agreement rendered no benefit to Plaintiff and only benefit Tesla. However, the Court finds that compensation from employment clearly benefitted Plaintiff. Moreover, this is not a valid basis to invalidate the arbitration clause. Eighth, Plaintiff argues that Tesla was in a superior bargaining position, did not explain the agreement and never indicated that terms in the agreement could be negotiated or changed. It is not the duty of a party to explain the legal effects of every provision of a contract. See id. (citing Ramos v. Westlake Servs. LLC, 242 Cal. App. 4th 674, 195 Cal. Rptr. 3d 34, 43 (2015) ("No law requires that parties dealing at arm's length have a duty to explain to each other the terms of a written contract." (internal quotation marks omitted))). Plaintiff cannot avoid arbitration by claiming he did not fully understand the implications of signing the arbitration agreement. White v. Second Judicial Dist. Court, 543 P.3d 107 (Nev. 2024). Finally, Plaintiff does not provide a basis for the Court to find that he could not have rejected the offer of employment.

The Court finds nothing identified by the Plaintiff that rises to substantive unconscionability.

///
///
///
///
///
///

### V. CONCLUSION

**IT IS THEREFORE ORDERED** that the [9] Motion to Remand is **DENIED**.

**IT IS FURTHER ORDERED** that the [10] Motion to Compel Arbitration is **GRANTED**. All other pending motions are **DISMISSED**.

**IT IS FURTHER ORDERED** that the parties submit a status report every ninety (90) days after the commencement of arbitration until arbitration is concluded.

**DATED:** September 30, 2024

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**